IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>v.<br><br>SIMMON LEE WILCOX,<br>BENJAMIN DAVID GRISEL,<br>BRENDA ANN GRISEL,<br>JERON SCOTT HALES,<br>JEREMY DANIEL PERKINS,<br>and RANDALL DAVID AYRTON,<br><br>                         Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE<br><br><br>Case No. 2:13-CR-717 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Benjamin David Grisel's Motion to Suppress Evidence. Defendant seeks suppression of all evidence obtained or derived from the search of the Best Life Health Center and Medical Office of Dr. Simmon Wilcox, two storage units at the Sunbrook Secure Storage facility (the "storage units"), and two vehicles, conducted on or about February 28, 2013. Defendant also seeks to suppress evidence from a second search of the storage units on or about May 29, 2013. For the reasons discussed below, the Court finds that Defendant lacks standing to challenge these searches and seizures, and will deny his Motion.

I. BACKGROUND

On February 25, 2013, the government submitted an Application for Search Warrant to the Magistrate Judge. The Application sought a warrant to search the office of Dr. Simmon Lee Wilcox at 1085 South Bluff Street in St. George, Utah. The Application requested seizure of documents related to patients of Dr. Wilcox.

1

The Application was supported by the Affidavit of Kevin T. Skidmore. Mr. Skidmore is a Diversion Investigator for the United States Drug Enforcement Administration ("DEA"). Mr. Skidmore was conducting an investigation of Dr. Wilcox for his suspected violations of 21 U.S.C. § 841(a)(1), for prescribing controlled substances outside the course of professional practice and not for legitimate medical purposes. The Affidavit stated that there was reason to believe that Dr. Wilcox had prescribed various controlled substances outside the course of professional practice and not for legitimate medical purposes.

The Statement of Probable Cause section of the Affidavit reveals that law enforcement had received information from a number of sources—including pharmacists, concerned citizens, confidential sources, and undercover officers—all of whom provided information suggesting that Dr. Wilcox was prescribing controlled substances without a legitimate medical purpose. The Affidavit requested permission to search Dr. Wilcox's offices and to seize the patient records of certain individuals. The Magistrate Judge issued the warrant at 3:15 p.m. on February 25, 2013, authorizing the search of Dr. Wilcox's office.

A Supplemental Affidavit in Support of Application for Search Warrant was presented to the Magistrate Judge on February 28, 2013. The Supplemental Affidavit stated that a U-Haul truck was parked in front of Dr. Wilcox's office and that individuals were removing items from the office and loading them into the U-Haul truck. Officers observed that little furniture, office equipment, or other items remained in the office. Based upon this, and the previously submitted application, officers sought permission to search the U-Haul truck. The Magistrate Judge issued a second warrant on February 28, 2013, at 10:15 a.m., authorizing the search of Dr. Wilcox's office and the U-Haul truck.

A Second Supplemental Affidavit in Support of Application for Search Warrant was also submitted on February 28, 2013. In the Second Supplemental Affidavit, the affiant indicated that officers from the St. George Police Department had spoken with Michael Pondoyo, an employee of Dr. Wilcox. Mr. Pondoyo informed officers that he had been moving all equipment and records from Dr. Wilcox's office to two storage units at the Sunbrook Secure Storage. Mr. Pondoyo also indicated that he had a file cabinet and boxes of files in his Toyota truck. Officers requested a supplemental order authorizing the search of the two storage units, a computer, and Mr. Pondoyo's truck. At 3:50 p.m. that same day, the Magistrate Judge issued the warrant.

On May 29, 2013, the government presented another Application for a Search Warrant seeking to again search the storage units to obtain records related to other patients that had not previously been seized. The agent stated that officers had searched the storage units previously and had seized the patient charts of individuals that were authorized by the Court.[1] However, officers found that additional patient charts that were not listed in the prior warrant were also being stored in the storage units. The agent noted that the storage unit facility was owned by Dr. Wilcox's family members and any attempt to verify the current status of the storage units could possibly compromise the investigation. The investigators stated they had no information indicating that any of the records had been moved since February 28, 2013. Based upon this, the officers sought permission to again search the storage units and seize certain patient records. The Magistrate Judge issued the warrant authorizing the second search of the storage units that same day.

---

[1] At the hearing on Defendant's Motion to Suppress, the government acknowledged that the prior search had only uncovered patient records in one of the storage units, not both.

Defendant Benjamin Grisel testified that he was part owner of a medical clinic called Best Life Health Center. Defendant, along with Dr. Wilcox and a third person, purchased the clinic from the widow of the doctor that had previously operated it as a hormone therapy clinic. As part of that purchase, they took over the medical records from the previous practice.

Defendant Grisel did not actually put forward any money as part of the purchase, but received an ownership interest based on his ability to put the deal together and his ongoing participation in the clinic. The clinic originally operated at 1999 West Canyon View Drive in St. George, Utah, but Defendant Grisel testified that it later moved to the Bluff Street location that was the subject of the initial search warrants.

Dr. Wilcox was the majority owner of Best Life Health Center and Defendant Grisel owned five percent of the practice. Defendant was initially the CEO and co-manager of the business. Defendant Grisel designed the patient forms used by the clinic and provided other support, including managing the website for the clinic. Defendant did not, however, participate in the day-to-day operations of the clinic. Instead, other employees ran the operations of the clinic and input information into the patient files. Defendant was compensated for his efforts through the beginning of 2011, but was not paid thereafter. It appears that Defendant's role in the business diminished over time.

At some point, Dr. Wilcox indicated that he was going to shut down the business and would be moving the records into storage. While Defendant Grisel was made aware of this fact, he did not actually move any of the documents from the clinic to the storage units. Further, there is no evidence that Defendant Grisel either rented or had access to the storage units.

## II.  DISCUSSION

The government contends that Defendant Grisel lacks standing to challenge the searches and seizures.  Defendant argues that he has standing based on his ownership interest in Best Life Health Center and because he was a patient of Dr. Wilcox.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[2]  "Fourth Amendment rights are personal and cannot be claimed vicariously."[3]  "The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search."[4]  "Whether a defendant's own Fourth Amendment rights were violated by a challenged search turns on the classic Fourth Amendment test: 'whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as objectively reasonable.'"[5]  The Court will address Defendant's expectation of privacy in relation to each area where searches were conducted.

A.   DR. WILCOX'S OFFICE

 "It is clear beyond question that the Fourth Amendment freedom from unreasonable searches and seizures extends to business premises as well as residential premises."[6]  However, "a corporate employee does not have standing to challenge the search of corporate offices or

---

[2] U.S. Const. amend. IV.

[3] *United States v. Valdez Hocker*, 333 F.3d 1206, 1208 (10th Cir. 2003).

[4] *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) (quotations omitted).

[5] *Id.* (quoting *United States v. Erwin*, 875 F.2d 268, 270 (10th Cir. 1989)).

[6] 6 Wayne R. LaFave, Search and Seizure § 11.3(d) (5th ed. 2012).

other property merely because the employee has access to or control over certain areas."[7] "Given the great variety of work environments . . . the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis."[8] The Court must "examine all of the circumstances of the working environment and the relevant search."[9] "In addressing this question, we are mindful that the 'expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home.'"[10]

The Tenth Circuit has identified several factors to consider in determining whether an employee has standing to challenge seizure of an item from the workplace. The Court is to "consider all of the relevant circumstances, including (1) the employee's relationship to the item seized; (2) whether the item was in the immediate control of the employee when it was seized; and (3) whether the employee took actions to maintain his privacy in the item."[11]

As to the first factor, the Tenth Circuit noted that "a court is more apt to find an employee has standing to challenge the seizure of personal items or the search of an area where personal items are stored than the search or seizure of work-related documents or materials."[12] Considering the second factor, the court stated that "we believe an employee has a greater expectation of privacy in items in his immediate control, regardless of the business connection he

---

[7] *United States v. Anderson*, 154 F.3d 1225, 1230 (10th Cir. 1998). The Court recognizes that Defendant would have a reasonable expectation of privacy in his private office, if he had one. *Id.* However, there is no evidence that Defendant had an office at the Bluff Street location. "Therefore, we must determine to what extent an employee has standing to challenge the search of an area in his workplace that is not his office." *Id.*

[8] *O'Connor v. Ortega*, 480 U.S. 709, 718 (1987).

[9] *Anderson*, 154 F.3d at 1230.

[10] *Id.* at 1229 (quoting *United States v. Leary*, 846 F.2d 592, 597 n.6 (10th Cir. 1988)).

[11] *Id.* at 1232.

[12] *Id.* at 1231.

may or may not have to the room where the items are found."[13] And on the third factor, the court stated that "[w]e believe it is appropriate to consider whether an employee took steps to keep his personal property private in the workplace in determining whether the employee had a reasonable expectation of privacy in the area searched."[14]

Considering these factors, as well as all of the relevant circumstances, the Court finds that Defendant Grisel has failed to show a reasonable expectation of privacy in the medical clinic at the Bluff Street location. First, Defendant has a tenuous relationship to the patient records. Defendant's claim of an expectation of privacy arises out of his ownership interest in the business which, in turn, he asserts provides him an ownership interest in the patient files. While "ownership is a 'factor to be considered in determining whether an individual's Fourth Amendment rights have been violated,'" "[o]wnership of an item does not confer 'automatic standing.'"[15] With the possible exception of his own medical records, Defendant has failed to show that any of the seized records were personal items or that the search occurred in an area where his personal items were stored. Even as to his own medical records, Defendant has failed to demonstrate that he had personal possession of them, as opposed to them being records kept and maintained by the clinic.

Defendant also argues that he designed the patient forms that were being used. While Defendant may have created the forms, there is no evidence that he participated in filling out the forms or that he had any role in maintaining the patient files. Rather, Defendant testified that others were involved in these operations of the clinic.

---

[13] *Id.* at 1232.

[14] *Id.*

[15] *Id.* at 1231 (quoting *United States v. Salvucci*, 448 U.S. 83, 91 (1980)).

Second, there is no evidence that the seized items were in Defendant's immediate control when they were seized. There is no evidence that Defendant was at the Bluff Street location at the time the search was conducted. Indeed, the evidence seems to show that Defendant's involvement in the business had decreased over time. While Defendant was never excluded from the office, there is no evidence that he had office space in the building or that he regularly worked there. Instead, Defendant stated that he only went to the office once a week or once every other week.

Third, there is little evidence that Defendant took actions to maintain his privacy in the patient records. There is evidence that the records were secured and that access to the records was limited. In addition, Defendant testified that Dr. Wilcox's approval was required before any records were released and that employees, including himself, did not have the ability to release patient records without that approval. While this goes to show the security measures the clinic took to ensure the privacy of the patient records, this fact has limited relevance with respect to Defendant.[16] The evidence specific to Defendant shows that he had limited contact with the patient files.

Finally, though not dispositive, the Court notes that by the time of the search, Best Life Health Center appears to have largely ceased operating as it was originally intended and a different business, CTR Health Center, Inc., was incorporated at the Bluff Street address. Defendant Grisel has claimed no ownership interest in CTR Health Center. Thus, to the extent that Defendant seeks suppression of patient records generated solely by CTR Health Center, he

---

[16] *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 698 (9th Cir. 2009) ("The security measures that SDI took to ensure the privacy of its business records are relevant only to the standing of the corporation itself, not its officers.").

clearly has no basis to challenge the search and seizure of those records.[17]  Based upon all of the above, the Court finds that Defendant does not have a reasonable expectation of privacy sufficient to challenge the search and seizure of Dr. Wilcox's office.

B.     THE VEHICLES

Defendant also challenges the search of the U-Haul truck and Mr. Pondoyo's truck. "Fourth Amendment rights are personal, and, therefore, 'a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises.'"[18]

There is no evidence that Defendant had any possessory or property interest in either vehicle, nor is there any evidence that Defendant was a driver or passenger of either vehicle. Therefore, he lacks standing to challenge the search of either vehicle.

Any claim for standing as to the searches of the vehicles must be premised on Defendant's interest in the items seized from the vehicle, specifically the patient records. For substantially the same reasons set forth above, the Court finds that Defendant has failed to show a reasonable expectation of privacy in those records.

C.     THE STORAGE UNITS

Defendant's final challenge is to the search of the storage units. The Tenth Circuit has stated that "[p]eople generally have a reasonable expectation of privacy in a storage unit, because

---

[17] Defendant claims that CTR was using the forms he created for Best Life Health Center. However, it is the content of the forms, rather than the forms themselves, that is important here.

[18] *United States v. DeLuca*, 269 F.3d 1128, 1131 (10th Cir. 2001) (quoting *United States v. Erwin*, 875 F.2d 268 (10th Cir. 1989)).

9

storage units are secure areas that 'command a high degree of privacy.'"[19]  "[A]n individual can have a recognized privacy expectation in a storage space even when he or she is not the lessee of the unit."[20]

In this case, there is no evidence that Defendant leased the storage units, paid any part of the rental fee, was named in the rental agreement, used the storage units, or even had access to them.  Defendant testified that it was Mr. Pondoyo that moved the contents of Dr. Wilcox's office to the storage units and that he, Mr. Pondoyo, had the keys to the unit.  Nor is there evidence that Defendant personally stored any items at the storage units.  Instead, the storage units were used to store items taken from the Bluff Street office, including patient medical records.  Thus, Defendant's only claim for standing is his purported interest in the patient files.  As with the other areas, the Court finds that this interest alone is insufficient to demonstrate that Defendant had a legitimate expectation of privacy in the storage units or their contents.

## III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Suppress Evidence (Docket No. 110) is DENIED.  Pursuant to 18 U.S.C. § 3161(h)(1)(D), (H), the time from the filing of the Motion to the date of this order is excluded from computation under the Speedy Trial Act.

---

[19] *United States v. Johnson*, 584 F.3d 995, 1001 (10th Cir. 2009) (quoting *United States v. Salinas-Cano*, 959 F.2d 861, 864 (10th Cir. 1992)).

[20] *Id.*

DATED this 15th day of May, 2015.

                BY THE COURT:

                _____
                Ted Stewart
                United States District Judge